IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>PREDRAG KNEZEVIC, RPM REAL ESTATE INVESTMENT, INC., NORTH SAWYER HOLDINGS, LTD., and P AND T REAL ESTATE INVESTMENT GROUP, LLC,<br><br>Defendants. | Case No. 20-cv-6099 |

## COMPLAINT

Plaintiff, PNC Bank, National Association (referred to herein, as "Bank" or "PNC"), by its attorneys Carlson Dash, LLC, and as for its Complaint against Predrag Knezevic, RPM Real Estate Investment, Inc., North Sawyer Holdings, Ltd., and P and T Real Estate Investment Group, LLC, alleges and shows to the Court as follows:

### NATURE OF THE ACTION

1. This arises from the fraud perpetrated by Defendants, Predrag Knezevic, RPM Real Estate Investments, Inc., North Sawyer Holdings, Ltd., and P and T Real Estate Investment Group, LLC, through a conspiracy of fraudulent acts.

### PARTIES

2. PNC is a national banking association with its principal place of business located in Pennsylvania, and the state designated on its origination certificate is Delaware.

3. Predrag Knezevic ("Knezevic") is a citizen of Illinois and resident of the State of Illinois, residing at 6508 N. Richmond St, Unit 2A, Chicago, Illinois.

1

4. RPM Real Estate Investment, Inc. ("RPM") is an Illinois corporation with its principal place of business in Chicago, Illinois. On information and belief, RPM is in the business of owning and operating real estate.

5. North Sawyer Holdings, Ltd. ("North Sawyer"), is an Illinois corporation with its principal place of business in Chicago, Illinois. On information and belief, North Sawyer is in the business of owning and operating real estate.

6. P and T Real Estate Investment Group, LLC ("P&T") is an Illinois limited liability company whose principal place of business was in Chicago, Illinois. Upon information and belief according to the Illinois Secretary of State website, P&T is involuntarily dissolved effective November 27, 2019 and its sole member is Knezevic. On information and belief P&T was/is in the business of owning and operating real estate.

7. Knezevic, a Manager of P&T, is a citizen of Illinois and resident of the State of Illinois, residing at 6508 N. Richmond St, Unit 2A, Chicago, Illinois.

8. Knezevic, as of the date of the commencement of this lawsuit, is the President of RPM, North Sawyer, and was a Manager of P&T.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 18 U.S.C. § 1964. The amounts in controversy exceed, exclusive of interest, fees, and costs, the sum specified under 28 U.S.C. § 1332 and, as detailed above, the parties maintain diversity of citizenship.

10. A substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this District, and this venue is proper pursuant to 28 U.S.C. § 1391.

## NON-PARTY ENTITIES AFFILIATED WITH DEFENDANTS

11. Hall Transport, Inc. ("Hall") is an Illinois corporation incorporated on August 29, 2012, upon information and belief according to the Illinois Secretary of State website was involuntarily dissolved on February 10, 2020 for failure to file the corporate annual report in due in August 2019

12. Jelena Dimic ("Dimic"), the President of Hall, upon information and belief, is a citizen of Illinois and resident of the State of Illinois, residing at 6000 N Sheridan Rd, Apt 402, Chicago, IL 60660.

13. Drazo Transport, Inc. ("Drazo") is an Illinois corporation incorporated on September 20, 2016, upon information and belief according to the Illinois Secretary of State website was involuntarily dissolved on February 14, 2020 for failure to file the corporate annual report due in September 2019.

14. Denali, Inc. ("Denali") is an Illinois corporation incorporated on September 17, 2013, upon information and belief according to the Illinois Secretary of State website was involuntarily dissolved on February 14, 2020 for failure to file the corporate annual report due in September 2019.

## FACTUAL ALLEGATIONS

15. PNC is a national banking association that provides a wide range of services, including deposit accounts and loans, to individuals, small businesses, corporations, and government entities.

### Hall Transport, Inc. and Jelena Dimic

16. On July 25, 2018, Hall executed and delivered to PNC an application requesting that PNC extend a term loan for an amount up to $50,000.00 ("Hall Loan") which was approved

and funded by PNC by wire transfer. As part of the Hall Loan, Dimic unconditionally guaranteed to pay all amounts owing from Hall to PNC ("Loan Guaranty").

17. On July 25, 2018, Hall executed and delivered to PNC an application requesting that PNC extend a line of credit of $25,000.00 ("Hall Line of Credit") which was approved and funded by PNC by wire transfer. As part of the Hall Line of Credit, Dimic unconditionally guaranteed to pay all amounts owing from Hall to PNC ("Line of Credit Guaranty") The Hall Loan, Loan Guaranty, Hall Line of Credit, and Line of Credit Guaranty shall be collectively referred to as "Hall Loan Documents". A copy of the Hall Loan Documents is attached as Group **Exhibit 1.**

18. According to the Hall Loan Documents, the reason for the Hall Loan was for the purchase of equipment. Ex. 1.

19. According to the Hall Loan Documents, the reason for the Hall Line of Credit was for working capital. Ex. 1.

20. Hall was purportedly a trucking company.

21. On July 28, 2018, three days after receiving the funds from PNC, Hall issued a check drawn from its PNC account to the order of RPM in the amount of $14,000.00 and on August 6, 2018, Hall issued another check drawn from its PNC account to the order of RPM in the amount of $7,000.00 (collectively referred to as the "Hall Checks"). A copy of the Hall Checks is attached as group **Exhibit 2**.

22. Since September 2018, two months after the Hall Loan was funded, Hall and Dimic defaulted under the terms of the Hall Loan Documents by failing to make payments as required by the Hall Loan.

23. In October 2018, three months after the Hall Line of Credit was funded, Hall and Dimic defaulted under the terms of the Hall Loan Documents by failing to make payments as required by the Hall Line of Credit.

24. On March 20, 2019, PNC filed a four-count complaint against Hall and Dimic for breach of the Hall Loan Documents in the United States District Court for the Northern District of Illinois, Eastern Division, known as *PNC National Bank Association v. Hall Transport, Inc. and Jelena Dimic* Case No. 19-cv-01930 (the "Hall Lawsuit"). A copy of the Hall Lawsuit is attached as **Exhibit 3**.

25. On May 28, 2019, a judgment was entered in favor of PNC and against Hall in the amount of $81,843.56 plus fees and costs. A copy of the judgement is attached as **Exhibit 4**.

## Drazo Transport, Inc.

26. On November 9, 2018, Drazo executed and delivered to PNC an application requesting that PNC extend a term loan for an amount up to $60,000.00 ("Drazo Loan") which was approved and funded by PNC by wire transfer ("Drazo Loan Documents"). A copy of the Drazo Loan Documents is attached as **Exhibit 5**.

27. According to the Drazo Loan Documents, the reason for the Drazo Loan was for the purchase of equipment. Ex. 5.

28. Drazo was purportedly a trucking company.

29. Drazo, upon receipt of the funds from the Drazo Loan, issued the following checks drawn from its PNC account:

    a) November 26, 2018, a check in the amount of $9,000.00 paid to the order of RPM,
    b) November 27, 2018, a check in the amount of $9,200.00 paid to the order of North Sawyer,
    c) November 27, 2018, a check in the amount of $8,000.00 paid to the order of P&T.

The checks drawn on Drazo's PNC account are collectively referred to as the "Drazo Checks". A copy of the Drazo Checks is attached as group **Exhibit 6**.

30. Since January 2019, two months after the Drazo Loan was funded, Drazo defaulted under the terms of the Drazo Loan by failing to make payments as required by the Drazo Loan Documents.

## Denali, Inc.

31. On June 11, 2018, Denali executed and delivered to PNC an application requesting that PNC extend a term loan for an amount up to $75,000.00 ("Denali Loan") which was approved and funded by PNC by wire transfer ("Denali Loan Documents"). A copy of the Denali Loan Documents is attached as **Exhibit 7**.

32. According to the Denali Loan Documents, the purpose of the Denali Loan was for the purchase of a semi-truck. Ex. 7.

33. On December 18, 2018, Denali issued a check to the order of RPM in the amount of $10,000.00 ("Denali Check"). A copy of the Denali Check is attached as **Exhibit 8**.

34. On December 29, 2018, weeks after issuing the Denali Check, Denali defaulted under the terms of the Denali Loan by failing to make payments as required by the Denali Loan Documents.

35. As of September 30, 2020, $67,557.38 of principal is owing on the Denali Loan. Additionally, interest and late fees have and continue to accrue. Those amounts plus, attorneys fees and costs remain due and owing on the Denali loan.

**Citation issued as to RPM**

36.     In the Hall Lawsuit, the Clerk of the US District Court issued a Citation to Discover Assets on third-party respondent to RPM ("RPM Citation"). A copy of the RPM Citation and Affidavit of Service are attached as **Exhibit 9**.

37.     On August 21, 2019, in response to the RPM Citation, RPM by its president executed an Affidavit and attached a copy of a check in the amount of $7,000.00 dated August 8, 2018 made payable to RPM by Dimic. A copy of the Affidavit and redacted check are attached as **Exhibit 10**.

38.     In the Affidavit, RPM claims the check was given by Dimic "… as reimbursement for payment of medical expenses on her behalf in Belgrade, Serbia and for no other reason". Ex. 13, par 5.

39.     On September 18, 2019, Knezevic sat for a citation examination on behalf of RPM ("RPM Examination") and testified under oath that he is the sole shareholder of RPM, that RPM is in the business of owning and leasing residential real estate, and that all of the income generated for RPM is from such investments. A copy of excerpts of the RPM Examination are attached as **Exhibit 11**. See p. 7, 11-12.

40.     Mr. Knezevic further testified that he met Dimic through a mutual friend, that he only met her once, and that Dimic needed help getting funds to Serbia. See Ex 11, p. 15-20 and p. 22.

41.     In addition, Mr. Knezevic further testified that he only participated in this type of exchange for Dimic once and only for the $7,000.00, that the check was not for services provided by RPM to Hall or Dimic, and that it was not an investment from Hall or Dimic to RPM. See Ex. 11, p.22.

42. Mr. Knezevic further testified that RPM does not have a relationship with transport companies. See Ex. 11, p. 23-24.

## COUNT I
## Federal Civil RICO, 18 U.S.C. § 1962(c)

43. PNC incorporates by reference all of the preceding paragraphs in this Complaint as if fully set forth herein.

44. Knezevic, RPM, North Sawyer, and P&T ("Knezevic Entities") and the non-party entities affiliated with the Knezevic Entities namely Dimic, Drazo, and Denali (the "Borrowing Entities") violated RICO and PNC was injured as a result.

45. Each of the Knezevic Entities and the Borrowing Entities is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

46. Each of the Knezevic Entities and the Borrowing Entities violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs and as further described below.

47. The Knezevic Entities, together with the Borrowing Entities form an association-in-fact for the common purpose of constituting an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity ("Enterprise").

48. Knezevic, as the primary principal of the Knezevic Entities, had personal access and/or control of all of the actions of the Knezevic Entities including receipt of funds and investments of the companies' assets and as such controlled the work of the Enterprise.

49. The Enterprise has engaged in, and its' activities have affected interstate commerce.

50. The Borrowing Entities, each of whom are persons associated with the Enterprise, directly or indirectly, in the affairs of the Enterprise through a pattern of racketeering activity with the meaning of 18 U.S.C. 1961(2), 1961(5), and 1962(c). The Knezevic Entities and the Borrowing

Entities had the specific intent to engage in the substantive RICO violation alleged in this Complaint.

51. The acts of racketeering activity are acts which are indictable under 18 U.S.C. §1961(1)(B) and the Knezevic Entities and the Borrowing Entities committed at least two such acts or else aided and abetted such acts.

52. The acts of racketeering activities were not isolated and were continuous from June 2018 until November 2018.

53. The Knezevic Entities and the Borrowing Entities had, upon information and belief, legitimate business plans outside of the pattern of racketeering activity and therefore the Enterprise was not limited to the predicate acts and extended beyond the racketeering activity.

54. PNC alleges that Knezevic participated in the operation and management of the Enterprise by coordinating the commission of multiple acts of racketeering.

55. The Borrowing Entities committed acts constituting indictable offenses under 18 U.S.C. §§1343 and 1344 in that they devised or intended to devise a scheme to defraud PNC to obtain money from PNC by means of false or fraudulent pretenses, representations or promises. The Borrowing Entities, in their applications with PNC, stated that the funds borrowed from PNC were to be used to purchase equipment for their respective trucking/transportation companies. However, some of the funds were instead given to the Knezevic Entities even though the Knezevic Entities were not engaged in the business of offering services to transportation/trucking companies. The acts of the Borrowing Entities were done intentionally and knowingly with the specific intent to advance the Enterprise's scheme.

56. The Borrowing Entities caused PNC to transmit thousands of dollars in funds by wire transfer.

57. The Knezevic Entities' shared objective was for the Borrowing Entities to apply for loans they had no intention of repaying using companies they had no intention of keeping to divert those funds to companies owned and operated by Knezevic whose business activities was to purchase, manage, and profit from real property real estate investments.

58. PNC reasonably and justifiably relied upon the Borrowing Entities' false representations and PNC has been damaged as a direct and proximate cause of the Borrowing Entities' participation in the Enterprise.

59. PNC seeks an award of three times the damages it sustained, reasonable attorneys' fees and costs.

**WHEREFORE**, PNC Bank, National Association requests that the Court award actual, compensatory, and punitive damages in its favor and against Predrag Knezevic, RPM Real Estate Investment, Inc., North Sawyer Holdings, Ltd., and P and T Real Estate Investment Group, LLC in an amount in excess of $75,000.00 to be proven at trial or hearing plus additional interest, court costs and attorneys' fees; and any and all other relief the Court deems just, proper, and equitable.

## COUNT II
### Conspiracy to Violate Federal Civil RICO, 18 U.S.C. § 1962(d)

60. PNC incorporates by reference all of the preceding paragraphs in this Complaint as if fully set forth herein.

61. In violation of 18 U.S.C. § 1962(d), the Knezevic Entities and the Borrowing Entities knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation or management of the Enterprise as alleged above.

62. Knezevic, as the primary principal of the Knezevic Entities, had personal access and/or control of all of the actions of the Knezevic Entities including receipt of funds and investments of the companies' assets and as such, controlled the work of the Enterprise.

63. The conspiracy commenced at least as early as June 2018.

64. The conspiracy's purpose was to have entities apply for loans from PNC, intentionally fail to pay those loans back and divert some of the loan proceeds to entities all owned and operated by Knezevic rather than the intended purpose of the loans.

65. Each of the Knezevic Entities and the Borrowing Entities committed at least one overt act in furtherance of the conspiracy which included misleading PNC as to the purpose of the loan applications.

66. PNC has been injured and continues to be injured by the Knezevic Entities and the Borrowing Entities conspiracy in violation of 18 U.S.C. § 1962(d).

67. PNC seeks an award of three times the damages it sustained, reasonable attorneys' fees and costs.

**WHEREFORE**, PNC Bank, National Association requests that the Court award actual, compensatory, and punitive damages in its favor and against Predrag Knezevic, RPM Real Estate Investment, Inc., North Sawyer Holdings, Ltd., and P and T Real Estate Investment Group, LLC in an amount in excess of $75,000.00 to be proven at trial or hearing plus additional interest, court costs and attorneys' fees; and any and all other relief the Court deems just, proper, and equitable.

### COUNT III
### Conspiracy to Defraud

68. PNC incorporates by reference all of the preceding paragraphs in this Complaint as if fully set forth herein.

69. The Knezevic Entities and the Borrowing Entities, and each of them, combined and agreed with other and/or others to defraud PNC by mispresenting information on the loan applications to induce PNC into loaning them money that the Borrowing Entities did not intend to pay back.

11

70. Knezevic, as the primary principal of the Knezevic Entities, had personal access and/or control of all of the actions of the Knezevic Entities including receipt of funds and investments of the companies' assets and as such controlled the work of the Enterprise.

71. The conspiracy commenced at least as early as June 2018.

72. The Knezevic Entities and the Borrowing Entities, and each of them, acted in concert and with the common intent to support their common purpose to defraud PNC.

73. Each committed at least one overt act in furtherance of the conspiracy including misrepresenting to PNC the purported use of the funds borrowed from PNC.

74. The Knezevic Entities' and the Borrowing Entities' conduct was willful, wanton, and malicious.

75. The Knezevic Entities' and the Borrowing Entities' unlawful conspiracy was a direct and proximate cause of PNC's injuries in its business.

76. PNC seeks an award of actual damages and the imposition of punitive damages in an amount to be proven at trial or hearing.

**WHEREFORE**, PNC Bank, National Association requests that the Court award actual, compensatory, and punitive damages in its favor and against Predrag Knezevic, RPM Real Estate Investment, Inc., North Sawyer Holdings, Ltd., and P and T Real Estate Investment Group, LLC in an amount in excess of $75,000.00 to be proven at trial or hearing plus additional interest, court costs and attorneys' fees; and any and all other relief the Court deems just, proper, and equitable.

## COUNT IV
### Fraudulent Transfer - RPM Real Estate Investment, Inc.

77. PNC incorporates by reference all of the preceding paragraphs in this Complaint as if fully set forth herein.

12

78. At the time RPM received the checks from the Borrowing Entities, PNC was a creditor of the Borrowing Entities.

79. On information and belief, the transfers of funds from the Borrowing Entities to RPM were intentionally done.

80. On information and belief, the transfers from the Borrowing Entities to RPM were done without consideration.

81. The Borrowing Entities did not have assets sufficient to pay to PNC.

82. Shortly after the transfers were made from the Borrowing Entities to RPM, the Borrowing Entities defaulted on their loans with PNC.

**WHEREFORE**, PNC Bank, National Association requests that the Court award actual, compensatory, and punitive damages in its favor and against RPM Real Estate Investment, Inc., in an amount in amount to be proven at trial or hearing plus additional interest, court costs and attorneys' fees; and any and all other relief the Court deems just, proper, and equitable.

## COUNT V
**Fraudulent Transfer – North Sawyer Holdings, Ltd.**

83. PNC incorporates by reference all of the preceding paragraphs in this Complaint as if fully set forth herein.

84. At the time North Sawyer received the check from Drazo, PNC was a creditor of Drazo.

85. On information and belief, the reason the Drazo Check was written to North Sawyer, was to divert funds from Drazo to North Sawyer and to limit PNC's ability to recover from Drazo.

86. On information and belief, the transfer of funds was intentionally done.

87. On information and belief, the transfer from Drazo to North Sawyer was done without consideration.

88. After the transfer was made, Drazo did not have assets sufficient to pay PNC.

89. Shortly after the transfer was made, Drazo defaulted on the Drazo Loan with PNC.

**WHEREFORE** PNC Bank, National Association requests that the Court award damages in its favor and against North Sawyer Holdings, Ltd. in an amount in amount to be proven at trial or hearing plus additional interest, court costs and attorneys' fees; and any and all other relief the Court deems just, proper, and equitable.

## COUNT VI
### Fraudulent Transfer – P and T Real Estate Investment, Inc.

90. PNC incorporates by reference all of the preceding paragraphs in this Complaint as if fully set forth herein.

91. At the time P&T received the check from Drazo, PNC was a creditor of Drazo.

92. On information and belief, the reason the Drazo Check was written to P&T, was to divert funds from Drazo to P&T and to limit PNC's ability to recover from Drazo.

93. On information and belief, the transfer of funds was intentionally done.

94. On information and belief, the transfer from Drazo to P&T was done without consideration.

95. After the transfer was made, Drazo did not have assets sufficient to pay PNC.

96. Shortly after the transfer was made, Drazo defaulted on the Drazo Loan with PNC.

**WHEREFORE** PNC Bank, National Association requests that the Court award damages in its favor and against P and T Real Estate Investment, Inc.. in an amount in amount to be proven at trial or hearing plus additional interest, court costs and attorneys' fees; and any and all other relief the Court deems just, proper, and equitable.

## COUNT VII
### Aiding and Abetting Fraudulent Transfer – Predrag Knezevic

97. PNC incorporates by reference all of the preceding paragraphs in this Complaint as if fully set forth herein.

98. At all times herein, Knezevic was the President of RPM, the President of North Sawyer, and the Manager of P&T.

99. Knezevic was aware of the transfers from the Borrowing Entities to the Knezevic Entities.

100. Knezevic, by his own admission, stated RPM did not participate in business activities with transportation companies nor did he offer a service by which those entities would pay RPM.

101. Accordingly, the transfers from the Borrowing Entities to the Knezevic Entities were made without consideration.

102. The transfers from the Borrowing Entities were at least in part the reason the Borrowing Entities defaulted on their loans with PNC.

103. Knezevic, by virtue of his positions with the Knezevic Entities and his knowledge of the transfers from the Borrowing Entities, assisted with the fraudulent transfers from the Borrowing Entities.

**WHEREFORE**, PNC Bank, National Association requests that the Court award damages in its favor and against Predrag Knezevic, in an amount to be proven at trial or hearing plus additional interest, court costs and attorneys' fees; and any and all other relief the Court deems just, proper, and equitable.

                Respectfully submitted,
                **PNC BANK, NATIONAL ASSOCIATION**

                By: /s/ Martin J. Wasserman
                      One of its Attorneys

Martin J. Wasserman ARDC # 6294040
Mona Naser ARDC # 6278114
CARLSON DASH, LLC
216 S. Jefferson Street, Suite 504
Chicago, Illinois 60661
Telephone: (312) 382-1600
Email: mwasserman@carlsondash.com
Email: mnaser@carlsondash.com