**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | |
| Plaintiff, | |
| v. | Case No. 20-cv-6099 |
| PREDRAG KNEZEVIC, RPM REAL ESTATE INVESTMENT, INC., NORTH SAWYER HOLDINGS, LTD., and P AND T REAL ESTATE INVESTMENT GROUP, LLC, | |
| Defendants. | |

**SECOND AMENDED COMPLAINT**

Plaintiff, PNC Bank, National Association (referred to herein, as "Bank" or "PNC"), by its attorneys Carlson Dash, LLC, and as for its Second Amended Complaint against Predrag Knezevic, RPM Real Estate Investment, Inc., North Sawyer Holdings, Ltd., and P and T Real Estate Investment Group, LLC, alleges and shows to the Court as follows:

**NATURE OF THE ACTION**

1.     This case arises from a fraudulent scheme perpetrated by Defendants, Predrag Knezevic, RPM Real Estate Investments, Inc., North Sawyer Holdings, Ltd., and P and T Real Estate Investment Group, LLC, through a conspiracy of fraudulent acts.

2.     PNC was a lender on multiple small business loans to trucking companies in the Chicagoland area, which almost immediately after the loan proceeds were distributed went into default.

3.     Additionally, PNC issued multiple business credit cards to small trucking companies in the Chicagoland area.

4. While PNC was not being paid on the loans and credit cards, the proceeds of PNC's loans and credit cards were either directly or indirectly being distributed to three real estate companies who are defendants in this action and their principal and owner Predrag Knezevic.

## PARTIES

5. PNC is a national banking association with its principal place of business located in Pennsylvania, and the state designated on its origination certificate is Delaware.

6. Predrag Knezevic ("Knezevic") is a citizen of Illinois and resident of the State of Illinois, residing at 6508 N. Richmond St, Unit 2A, Chicago, Illinois.

7. RPM Real Estate Investment, Inc. ("RPM") is an Illinois corporation with its principal place of business in Chicago, Illinois.

8. On information and belief, RPM is in the business of owning and operating real estate.

9. North Sawyer Holdings, Ltd. ("North Sawyer"), is an Illinois corporation with its principal place of business in Chicago, Illinois.

10. On information and belief, North Sawyer is in the business of owning and operating real estate.

11. P and T Real Estate Investment Group, LLC ("P&T") is an Illinois limited liability company whose principal place of business was in Chicago, Illinois. Upon information and belief according to the Illinois Secretary of State website, P&T is involuntarily dissolved effective November 27, 2019 and its sole member is Knezevic.

12. On information and belief P&T was/is in the business of owning and operating real estate.

13.   Knezevic, a Manager of P&T, is a citizen of Illinois and resident of the State of Illinois, residing at 6508 N. Richmond St, Unit 2A, Chicago, Illinois.

14.   Knezevic, as of the date of the commencement of this lawsuit, is the President of RPM and North Sawyer, and was a Manager of P&T.

## JURISDICTION AND VENUE

15.   This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  The amounts in controversy exceed, exclusive of interest, fees, and costs, the sum specified under 28 U.S.C. § 1332 and, as detailed above, the parties maintain diversity of citizenship.

16.   A substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this District, and this venue is proper pursuant to 28 U.S.C. § 1391.

## NON-PARTY ENTITIES AFFILIATED WITH DEFENDANTS

17.   Hall Transport, Inc. ("Hall") is an Illinois corporation incorporated on August 29, 2012.

18.   Upon information and belief according to the Illinois Secretary of State website Hall was involuntarily dissolved on February 10, 2020 for failure to file the corporate annual report due in August 2019.

19.   Hall was originally incorporated with the name Halilovic Maintenance.

20.   Jelena Dimic ("Dimic"), was President of Hall and upon information and belief, is a citizen of Illinois and resident of the State of Illinois, residing at 6000 N. Sheridan Rd, Apt 402, Chicago, IL 60660.

21.   In 2018, Dimic as president of Hall changed the name from Halilovic Maintenance to Hall Transport, Inc. and appointed herself as the registered agent.

3

22. On September 28, 2020, the agent and president for Hall was changed with the Illinois Secretary of State to Irena Radmanovic at 6508 N. Richmond St 1A, Chicago, Illinois 60645.

23. Defendant Predrag Knezevic owned the property commonly at 6508 N. Richmond St. 1A, Chicago, Illinois 60645.

24. Drazo Transport, Inc. ("Drazo") is an Illinois corporation incorporated on September 20, 2016.

25. Upon information and belief according to the Illinois Secretary of State website, Drazo was involuntarily dissolved on February 14, 2020 for failure to file the corporate annual report due in September 2019.

26. Denali, Inc. ("Denali") is an Illinois corporation incorporated on September 17, 2013.

27. Upon information and belief according to the Illinois Secretary of State website Denali was involuntarily dissolved on February 14, 2020 for failure to file the corporate annual report due in September 2019.

28. BlueStar Freight Inc. ("BlueStar") is an Illinois corporation incorporated on January 12, 2004 under the name Torcida Haul Co.

29. In 2014, Torcida Haul changed its name to BlueStar.

30. On December 14, 2017, the agent for BlueStar was changed to Mladen Pejanovic.

31. BlueStar used the property commonly known as 3001 S. Michigan Ave. #207, Chicago, IL 60616 for the address of its registered agent with the Illinois Secretary of State.

32. 3001 S. Michigan Ave. #207, Chicago, IL 60616 S. Michigan is leased by Predrag Knezevic.

33.     Mon-Ex, Inc. ("Mon-Ex") is an Illinois corporation incorporated on May 27, 2005.

34.     The president and secretary of Mon-Ex have been listed by the Illinois Secretary of State as having an address of 6508 N. Richmond Unit 2E, Chicago, Illinois.

35.     NKM Logistics LLC is a New Jersey limited liability company that was registered to do business in Illinois in 2017 by Marko Supica.

36.     IM Truck LLC is a Pennsylvania limited liability company which is registered and licensed to do business in Illinois.

37.     The president and registered agent for IM Truck was listed with the Illinois Secretary of State as being Brad Tokarz.

38.     Brad Tokarz is a longtime friend and business partner of Predrag Knezevic.

## FACTUAL ALLEGATIONS

39.     PNC is a national banking association that provides a wide range of services, including deposit accounts and loans, to individuals, small businesses, corporations, and government entities.

## NKM LOGISTICS, LLC AND MARCO SUPICA

40.     On April 13, 2018, NKM Logistics, by and through its principal Marko Supica, executed that certain application requesting that PNC extend a term loan in the amount of $75,000.00 ("NKM Term Loan") which was approved by PNC.

41.     As part of the NKM Term Loan, Marko Supica unconditionally guaranteed to pay all amounts owing from NKM to PNC ("NKM Term Loan Guaranty").

42.     On April 17, 2018, PNC approved NKM's application and issued the Business Banking Term Loan Agreement. The NKM Term Loan, the NKM Guaranty and NKM's Business

Banking Term Loan Agreement shall be collectively referred to as "NKM Loan Documents". A copy of the NKM Loan Documents is attached as **Group Exhibit 1.**

43.     According to the NKM Loan Documents, the reason for the NKM Term Loan was for the purchase of equipment. Ex. 1.

44.     The proceeds from NKM Term Loan were disbursed into an account at PNC in the name of NKM.

45.     On or about April 27, 2018, there was a disbursement from NKM's account at PNC to Marco Supica in the amount of $33,750.00.

46.     On April 27, 2018, Marko Supica obtained a cashier's check from PNC payable to North Sawyer Holdings, LTD in the amount of $18,000.00 which was later deposited by North Sawyer Holdings, LTD. A copy of the cashier's check is attached as **Exhibit 2**.

47.     On information and belief, in April and May, 2018 there were additional payments from either NKM or Marko Supica to the Defendants.

48.     On March 1, 2019, PNC filed a complaint against NKM and Marko Supica for breach of the NKM Loan Documents in the in the Circuit Court of Cook County, known as *PNC National Bank Association v. NKM Logistics and Marco Supica,* Case No. 19-L-0502123 (the "NKM Lawsuit").

49.     On June 21, 2019, judgment was entered in favor of PNC and against NKM and Marko Supica in the amount of $80,026.00. A copy of the judgment is attached as **Exhibit 3**.

50.     The judgment remains entirely unsatisfied.

**HALL TRANSPORT, INC. AND JELENA DIMIC**

51.     On July 25, 2018, Hall executed and delivered to PNC an application requesting that PNC extend a term loan for an amount up to $50,000.00 ("Hall Loan") which was approved and funded by PNC by wire transfer.

52.     As part of the Hall Loan, Dimic unconditionally guaranteed to pay all amounts owing from Hall to PNC (the "Hall Loan Guaranty").

53.     On July 25, 2018, Hall executed and delivered to PNC an application requesting that PNC extend a line of credit of $25,000.00 ("Hall Line of Credit") which was approved and funded by PNC by wire transfer.

54.     As part of the Hall Line of Credit, Dimic unconditionally guaranteed to pay all amounts owing from Hall to PNC ("Hall Line of Credit Guaranty") The Hall Loan, Hall Loan Guaranty, Hall Line of Credit, and Hall Line of Credit Guaranty shall be collectively referred to as "Hall Loan Documents".  A copy of the Hall Loan Documents is attached as **Group Exhibit 4**.

55.     According to the Hall Loan Documents, the reason for the Hall Loan was for the purchase of equipment. Ex. 4.

56.     According to the Hall Loan Documents, the reason for the Hall Line of Credit was for working capital.  Ex. 4.

57.     Hall was purportedly a trucking company.

58.     On July 28, 2018, three days after receiving the funds from PNC, Hall issued a check drawn from its PNC account to the order of RPM in the amount of $14,000.00 and on August 6, 2018, Hall issued another check drawn from its PNC account to the order of RPM in the amount of $7,000.00 (collectively referred to as the "Hall Checks").  A copy of the Hall Checks is attached as **Group Exhibit 5**.

59.     Since September 2018, two months after the Hall Loan was funded, Hall and Dimic defaulted under the terms of the Hall Loan Documents by failing to make payments as required by the Hall Loan.

60.     In October 2018, three months after the Hall Line of Credit was funded, Hall and Dimic defaulted under the terms of the Hall Loan Documents by failing to make payments as required by the Hall Line of Credit.

61.     On March 20, 2019, PNC filed a four-count complaint against Hall and Dimic for breach of the Hall Loan Documents in the United States District Court for the Northern District of Illinois, Eastern Division, known as *PNC National Bank Association v. Hall Transport, Inc. and Jelena Dimic*, Case No. 19-cv-01930 (the "Hall Lawsuit").  A copy of the Hall Lawsuit is attached as **Exhibit 6**.

62.     On May 28, 2019, a judgment was entered in favor of PNC and against Hall in the amount of $81,843.56 plus fees and costs.  A copy of the judgement is attached as **Exhibit 7**.

63.     The judgment remains unsatisfied.

## HALL TRANSPORT AND BLUE STAR FREIGHT

64.     On or about July 30, 2018, Hall Transport opened up a credit card with PNC in the name of Jelena Diminic (the "Hall Credit Card").

65.     On August 9, 2018 Blagoie Slijepcevic opened a PNC Visa Credit Card in the name (the "Blagoie Credit Card").

66.     Between August 7, 2018 and August 11, 2018, the following charges were placed on the Hall Credit Card.

a) 08/07/2018     $5,824.44     BlueStar Freight INC in Chicago, IL
b) 08/07/2018     $5,472.33     BlueStar Freight INC in Chicago, IL
c) 08/09/2018     $4,802.11     BlueStar Freight INC in Chicago, IL
d) 08/10/2018     $6,205.42     BlueStar Freight INC in Chicago, IL

8

     e) 08/11/2018    $2,621.11    BlueStar Freight INC in Chicago, IL

67.    Between August 21, 2018 and August 27, 2018, the following charges were placed on the Blagoie Credit Card.

     a) 08/21/2018    $4,361.22    Blue Star Freight INC in Chicago, IL
     b) 08/27/2018    $4,643.12    Blue Star Freight INC in Chicago, IL

68.    Neither the amounts owing on the Hall Credit Card or the Blagoie Credit Card were paid to PNC.

69.    The Defendants received the following checks from Bluestar Freight:

a) July 17, 2018, a check in the amount of $2,450.00 paid to the order of RPM
b) July 25, 2018 check in the amount of $2,000.00 payable to Knezevic
c) July 25, 2018 a check in the amount of $12,000.00 paid to the order of RPM
d) July 27, 2018 check in the amount of $3,7000 payable to Knezevic
e) July 31, 2018 check in the amount of $1,400.00 payable to Knezevic
f) August 7, 2018 a check in the amount of $1,950.00 paid to the order of North Sawyer
g) August 10, 2018, a check in the amount of $4,650.00 paid to the order of RPM
h) August 13, 2018 check in the amount of $820.00 payable to Knezevic
i) August 13, 2018 a check in the amount of $5,030.00 paid to the order of RPM
j) August 15, 2018 a check in the amount of $3,564.00 paid to the order of RPM
k) August 15, 2018 check in the amount of $1,710.00 payable to Knezevic
l) August 16, 2018 check in the amount of $2,130.00 payable to Knezevic
m) August 17, 2018 a check in the amount of $2,500.00 paid to the order of North Sawyer
n) August 23, 2018 a check in the amount of $5,650.00 paid to the order of RPM

**DRAZO TRANSPORT, INC.**

70.    On November 9, 2018, Drazo executed and delivered to PNC an application requesting that PNC extend a term loan for an amount up to $60,000.00 ("Drazo Loan") which was approved and funded by PNC by wire transfer ("Drazo Loan Documents"). A copy of the Drazo Loan Documents is attached as **Exhibit 8**.

71.    According to the Drazo Loan Documents, the reason for the Drazo Loan was for the purchase of equipment.  Ex. 8.

72.     Drazo was purportedly a trucking company.

73.     Drazo, upon receipt of the funds from the Drazo Loan, issued the following checks drawn from its PNC account:

a) November 26, 2018, a check in the amount of $9,000.00 paid to the order of RPM
b) November 27, 2018, a check in the amount of $9,200.00 paid to the order of North Sawyer,
c) November 27, 2018, a check in the amount of $8,000.00 paid to the order of P&T

74.     The checks drawn on Drazo's PNC account are collectively referred to as the "Drazo Checks". A copy of the Drazo Checks is attached as **Group Exhibit 9**.

75.     Since January 2019, two months after the Drazo Loan was funded, Drazo defaulted under the terms of the Drazo Loan by failing to make payments as required by the Drazo Loan Documents.

## DENALI, INC.

76.     On June 11, 2018, Denali executed and delivered to PNC an application requesting that PNC extend a term loan for an amount up to $75,000.00 ("Denali Loan") which was approved and funded by PNC by wire transfer. A copy of the loan application is referred herein as the "Denali Loan Documents". A copy of the Denali Loan Documents is attached as **Exhibit 10**.

77.     According to the Denali Loan Documents, the purpose of the Denali Loan was for the purchase of a semi-truck.  Ex. 7.

78.     On December 18, 2018, Denali issued a check to the order of RPM in the amount of $10,000.00 ("Denali Check"). A copy of the Denali Check is attached as **Exhibit 11**.

79.     On December 29, 2018, weeks after issuing the Denali Check, Denali defaulted under the terms of the Denali Loan by failing to make payments as required by the Denali Loan Documents.

80. As of September 30, 2020, $67,557.38 of principal is owing on the Denali Loan. Additionally, interest and late fees have and continue to accrue. Those amounts plus, attorneys' fees and costs remain due and owing on the Denali loan.

## MON-EX, INC.

81. On May 14, 2019, Mon-Ex, Inc. executed and delivered to PNC an application requesting that PNC extend both a term loan for an amount up to $50,000.00 and a line of credit in the amount of $25,000.00 (collectively the "Mon-Ex Loan") which were approved and funded by PNC. A copy of the loan application is referred herein as the "Mon-Ex Loan Documents". A copy of the Mon-Ex Documents is attached as **Exhibit 12**.

82. According to the Mon-Ex Loan Documents, the alleged purpose of the term loan was for the purchase of equipment.

83. PNC approved and funded the Mon-Ex loan.

84. On June 20, 2019, Mon-Ex remitted a certified check to the order of North Sawyer in the amount of $10,000.00 ("Mon-Ex Check"). A copy of the Mon-Ex Check is attached as **Exhibit 13**.

85. Shortly after the loan was issued Mon-Ex defaulted under the terms of the Mon-Ex Loan by failing to make payments as required by the Mon-Ex Loan Documents.

86. As of March 28, 2022, $25,000.00 of principal is owing on the Mon-Ex Loan. Additionally, interest and late fees have and continue to accrue. Those amounts plus, attorneys' fees and costs remain due and owing on the Mon-Ex Loan.

## IM TRUCK, LLC

87.     On June 27, 2018, IM Truck executed and delivered to the Bank an application requesting that the Bank extend IM Truck a term loan. A copy of the Credit Application is attached as **Exhibit 14** and incorporated herein by reference.

88.     As part of the Credit Application, IM Truck agreed, that if the Term Credit Application was approved, it would be bound by terms and conditions of the Business Banking Term Loan Agreement. ("IM Term Agreement").  A copy of the IM Term Agreement is attached as **Exhibit 15**.

89.     The Bank approved the term loan and extended credit to IM Truck in the amount of $75,000.00.

90.     IM Truck almost immediately failed to pay the Bank the amounts owing under the IM Term Agreement.

91.     The full principal balance plus interest remains outstanding on the IM Term Agreement.

92.     On information and belief, the Defendant received amounts from IM Truck.

93.     On information and belief, one or more of the Defendants controlled IM Truck.

## I TRUCK LOGISTICS, INC.

94.     On December 20, 2018, I Truck Logistics, Inc. executed and delivered to the Bank an application requesting that the Bank extend I Truck Logistics a term loan. A copy of the Credit Application is attached as **Exhibit 16**  and incorporated herein by reference.

95.     The Bank approved the term loan and extended credit to I Truck Logistics in the amount of $75,000.00 (the "I Truck Term Loan").

96.     The owner of I Truck Logistics was Marko Nikolic.

97.     I Truck Logistics failed to pay the Bank the amounts owing under the I Truck Term Loan.

98.     The full principal balance plus interest remains outstanding on the I Truck Term Loan.

99.     I Truck Logistics is a Florida corporation.

100.    I Truck Logistics has been dissolved by the state of Florida.

101.    On information and belief Marko Nikolic is currently incarcerated related to the charges against him in Case No. 20-CR-750 currently pending in the United States District Court for the Northern District of Illinois.

102.    The Defendants received the following checks from I Truck Logistics.

a) March 24, 2018 - $8,000.00
b) July 14, 2018 - $18,200.00
c) September 24, 2018 - $8,000.00

103.    I Truck Logistics did not owe a debt to any of the Defendants.

## CITATION ISSUED AS TO RPM

105.    In the Hall Lawsuit, the Clerk of the US District Court issued a Citation to Discover Assets on third-party respondent to RPM ("RPM Citation").  A copy of the RPM Citation and Affidavit of Service are attached as **Exhibit 17**.

106.    On August 21, 2019, in response to the RPM Citation, RPM by its president executed an Affidavit and attached a copy of a check in the amount of $7,000.00 dated August 8, 2018 made payable to RPM by Dimic.  A copy of the Affidavit and redacted check are attached as **Exhibit 18**.

107. In the Affidavit, RPM claims the check was given by Dimic "… as reimbursement for payment of medical expenses on her behalf in Belgrade, Serbia and for no other reason". Ex. 13, par 5.

108. On September 18, 2019, Knezevic sat for a citation examination on behalf of RPM ("RPM Examination") and testified under oath that he is the sole shareholder of RPM, that RPM is in the business of owning and leasing residential real estate, and that all of the income generated for RPM is from such investments. A copy of excerpts of the RPM Examination are attached as **Exhibit 19**. See p. 7, 11-12.

109. Mr. Knezevic further testified that he met Dimic through a mutual friend, that he only met her once, and that Dimic needed help getting funds to Serbia. See Ex 14, p. 15-20 and p. 22.

110. Mr. Knezevic further testified that he only participated in this type of exchange for Dimic once and only for the $7,000.00, that the check was not for services provided by RPM to Hall or Dimic, and that it was not an investment from Hall or Dimic to RPM. See Ex. 14, p.22.

111. Mr. Knezevic further testified that RPM does not have a relationship with transport companies. See Ex. 14, p. 23-24.

### COUNT I
### Federal Civil RICO, 18 U.S.C. § 1962(c)

112. PNC incorporates by reference all of the preceding paragraphs in this Complaint as if fully set forth herein.

113. Knezevic, RPM, North Sawyer, and P&T ("Knezevic Entities") and the non-party entities affiliated with the Knezevic Entities namely Dimic, Drazo, Denali, Bluestar, NKM, Mon-Ex and IM Truck (the "Borrowing Entities") violated RICO and PNC was injured as a result.

114.    Each of the Knezevic Entities and the Borrowing Entities is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

115.    Each of the Knezevic Entities and the Borrowing Entities violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs and as further described below.

116.    The Knezevic Entities, together with the Borrowing Entities form an association-in-fact for the common purpose of constituting an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity ("Enterprise").

117.    Knezevic, as the primary principal of the Knezevic Entities, had personal access and/or control of all of the actions of the Knezevic Entities including receipt of funds and investments of the companies' assets and as such controlled the work of the Enterprise.

118.    The Enterprise has engaged in, and its activities have affected interstate commerce, which include, but is not limited to the transferring of funds through the various checks, credit cards payments and proceeds through the banking system.

119.    The Borrowing Entities, each of whom are persons associated with the Enterprise, directly or indirectly, participated in the affairs of the Enterprise through a pattern of racketeering activity with the meaning of 18 U.S.C. 1961(2), 1961(5), and 1962(c). The Knezevic Entities and the Borrowing Entities had the specific intent to engage in the substantive RICO violation alleged in this Complaint.

120.    The acts of racketeering activity are acts which are indictable under 18 U.S.C. §1961(1)(B) and the Knezevic Entities and the Borrowing Entities committed at least two such acts or otherwise aided and abetted such acts.

121.    The acts of racketeering activities were not isolated and were continuous from April 2018 until 2020.

122.    The Knezevic Entities and the Borrowing Entities had, upon information and belief, legitimate business plans outside of the pattern of racketeering activity and therefore the Enterprise was not limited to the predicate acts and extended beyond the racketeering activity.

123.    PNC alleges that Knezevic participated in the operation and management of the Enterprise by coordinating the commission of multiple acts of racketeering.

124.    The Borrowing Entities committed acts constituting indictable offenses under 18 U.S.C. §§1343 and 1344 in that they devised or intended to devise a scheme to defraud PNC to obtain money from PNC by means of false or fraudulent pretenses, representations or promises. The Borrowing Entities, in their applications with PNC, stated that the funds borrowed from PNC were to be used to purchase equipment for their respective trucking/transportation companies. However, some of the funds were instead given to the Knezevic Entities even though the Knezevic Entities were not engaged in the business of offering services to transportation/trucking companies. The acts of the Borrowing Entities were done intentionally and knowingly with the specific intent to advance the Enterprise's scheme.

125.    The Borrowing Entities caused PNC to transmit thousands of dollars in funds by wire transfer.

126.    The Knezevic Entities' shared objective was for the Borrowing Entities to apply for loans they had no intention of repaying using companies they had no intention of keeping to divert those funds to companies owned and operated by Knezevic whose business activities were to purchase, manage, and profit from real property real estate investments.

127. PNC reasonably and justifiably relied upon the Borrowing Entities' false representations and PNC has been damaged as a direct and proximate cause of the Borrowing Entities' participation in the Enterprise.

128. PNC seeks an award of three times the damages it sustained, reasonable attorneys' fees and costs.

**WHEREFORE**, PNC Bank, National Association requests that the Court award actual, compensatory, and punitive damages in its favor and against Predrag Knezevic, RPM Real Estate Investment, Inc., North Sawyer Holdings, Ltd., and P and T Real Estate Investment Group, LLC in an amount in excess of $75,000.00 to be proven at trial or hearing plus additional interest, court costs and attorneys' fees; and any and all other relief the Court deems just, proper, and equitable.

<u>**COUNT II**</u>
**Conspiracy to Violate Federal Civil RICO, 18 U.S.C. § 1962(d)**

129. PNC incorporates by reference all of the preceding paragraphs in this Complaint as if fully set forth herein.

130. In violation of 18 U.S.C. § 1962(d), the Knezevic Entities and the Borrowing Entities knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation or management of the Enterprise as alleged above.

131. Knezevic, as the primary principal of the Knezevic Entities, had personal access and/or control of all of the actions of the Knezevic Entities including receipt of funds and investments of the companies' assets and as such, controlled the work of the Enterprise.

132. The conspiracy commenced at least as early as April, 2018.

133. The conspiracy's purpose was to have entities apply for loans from PNC, intentionally fail to pay those loans back and divert some of the loan proceeds to entities all owned and operated by Knezevic rather than the intended purpose of the loans.

134.     Each of the Knezevic Entities and the Borrowing Entities committed at least one overt act in furtherance of the conspiracy which included misleading PNC as to the purpose of the loan applications.

135.     PNC has been injured and continues to be injured by the Knezevic Entities and the Borrowing Entities conspiracy in violation of 18 U.S.C. § 1962(d).

136.     PNC seeks an award of three times the damages it sustained, reasonable attorneys' fees and costs.

**WHEREFORE**, PNC Bank, National Association requests that the Court award actual, compensatory, and punitive damages in its favor and against Predrag Knezevic, RPM Real Estate Investment, Inc., North Sawyer Holdings, Ltd., and P and T Real Estate Investment Group, LLC in an amount in excess of $75,000.00 to be proven at trial or hearing plus additional interest, court costs and attorneys' fees; and any and all other relief the Court deems just, proper, and equitable.

## COUNT III
### Conspiracy to Defraud

137.     PNC incorporates by reference all of the preceding paragraphs in this Complaint as if fully set forth herein.

138.     The Knezevic Entities and the Borrowing Entities, and each of them, combined and agreed with other and/or others to defraud PNC by mispresenting information on the loan applications to induce PNC into loaning money to, among others, the Borrowing Entities, which was not intended to be paid back.

139.     PNC believes that, in addition to the Borrowing Entities, the Knezevic Entities may have coordinated with other PNC borrowers and either directly or indirectly benefited from other loans to PNC for which PNC did not receive payment from its borrowers.

140.     Additionally, PNC believes, that one or more of the Borrower Entities may have been directly controlled by one or more of the Defendants.

141.     PNC reasonably relied on the statements contained in the loan applications of the Borrowing Entities and its due diligence in funding the loans.

142.     Knezevic, as the primary principal of the Knezevic Entities, had personal access and/or control of all of the actions of the Knezevic Entities including receipt of funds and investments of the companies' assets and as such controlled the work of the Enterprise.

143.     The conspiracy commenced at least as early as April 2018.

144.     The Knezevic Entities and the Borrowing Entities, and each of them, acted in concert and with the common intent to support their common purpose to defraud PNC.

145.     Each committed at least one overt act in furtherance of the conspiracy including misrepresenting to PNC the purported use of the funds borrowed from PNC.

146.     The Knezevic Entities' and the Borrowing Entities' conduct was willful, wanton, and malicious.

147.     The Knezevic Entities' and the Borrowing Entities' unlawful conspiracy was a direct and proximate cause of PNC's injuries in its business.

148.     PNC seeks an award of actual damages and the imposition of punitive damages in an amount to be proven at trial or hearing.

**WHEREFORE**, PNC Bank, National Association requests that the Court award actual, compensatory, and punitive damages in its favor and against Predrag Knezevic, RPM Real Estate Investment, Inc., North Sawyer Holdings, Ltd., and P and T Real Estate Investment Group, LLC in an amount in excess of $75,000.00 to be proven at trial or hearing plus additional interest, court costs and attorneys' fees; and any and all other relief the Court deems just, proper, and equitable.

## COUNT IV
### Fraudulent Transfer - RPM Real Estate Investment, Inc.

149.     PNC incorporates by reference all of the preceding paragraphs in this Complaint as if fully set forth herein.

150.     At the time RPM received the checks from the Borrowing Entities, PNC was a creditor of the Borrowing Entities.

151.     On information and belief, the transfers of funds from the Borrowing Entities to RPM were intentionally made.

152.     Additionally, PNC is a current creditor of I Truck Logistics.

153.     The transfers from the Borrowing Entities to RPM were made without consideration from RPM.

154.     The transfer from I Truck Logistics to RPM were made without consideration from RPM.

155.     I Truck's Logistics debt to PNC arose shortly after the transfers to RPM.

156.     The Borrowing Entities did not have assets sufficient to pay to PNC and did not pay PNC.

157.     Shortly after the transfers were made from the Borrowing Entities to RPM, the Borrowing Entities defaulted on their loans with PNC.

158.     I Truck defaulted on its loan to PNC shortly after it was made.

**WHEREFORE**, PNC Bank, National Association requests that the Court award actual, compensatory, and punitive damages in its favor and against RPM Real Estate Investment, Inc., in an amount in amount to be proven at trial or hearing plus additional interest, court costs and attorneys' fees; and any and all other relief the Court deems just, proper, and equitable.

<u>COUNT V</u>
**Fraudulent Transfer – North Sawyer Holdings, Ltd.**

159.    PNC incorporates by reference all of the preceding paragraphs in this Complaint as if fully set forth herein.

160.    At the time North Sawyer received the check from Drazo, PNC was a creditor of Drazo.

161.    At the time North Sawyer received the check from Marco Supica, PNC was a creditor of Marco Supica.

162.    At the time North Sawyer received the check from Mon-Ex, PNC was a creditor of of Mon-Ex.

163.    On information and belief, the transfer of funds were intentionally made.

164.    On information and belief, the transfers from Drazo, Mon-Ex and Marco Supica to North Sawyer were made without consideration.

165.    After the transfer was made, Drazo, Mon-Ex and Marco Supica did not have assets sufficient to pay PNC and did not pay PNC.

166.    Shortly after the transfer was made , Drazo defaulted on the Drazo Loan with PNC.

167.    Shortly after the transfer was made, NKM defaulted on the NKM Loan with PNC.

168.    Shortly after the transfer was made, Mon-Ex defaulted on the Mon-Ex Loan with PNC.

**WHEREFORE** PNC Bank, National Association requests that the Court award damages in its favor and against North Sawyer Holdings, Ltd. in an amount in amount to be proven at trial or hearing plus additional interest, court costs and attorneys' fees; and any and all other relief the Court deems just, proper, and equitable.

## COUNT VI
## Fraudulent Transfer – P and T Real Estate Investment, Inc.

169.     PNC incorporates by reference all of the preceding paragraphs in this Complaint as if fully set forth herein.

170.     At the time P&T received the check from Drazo, PNC was a creditor of Drazo.

171.     On information and belief, the reason the Drazo Check was written to P&T, was to divert funds from Drazo to P&T and to limit PNC's ability to recover from Drazo.

172.     On information and belief, the transfer of funds was intentionally made.

173.     On information and belief, the transfer from Drazo to P&T was made without consideration.

174.     After the transfer was made, Drazo did not have assets sufficient to pay PNC and did not pay PNC.

175.     Shortly after the transfer was made, Drazo defaulted on the Drazo Loan with PNC.

**WHEREFORE** PNC Bank, National Association requests that the Court award damages in its favor and against P and T Real Estate Investment, Inc. in an amount in amount to be proven at trial or hearing plus additional interest, court costs and attorneys' fees; and any and all other relief the Court deems just, proper, and equitable.

## COUNT VII
## Aiding and Abetting Fraudulent Transfer – Predrag Knezevic

176.     PNC incorporates by reference all of the preceding paragraphs in this Complaint as if fully set forth herein.

177.     At all times herein, Knezevic was the President of RPM, the President of North Sawyer, and the Manager of P&T.

178.     Knezevic was aware of the transfers from the Borrowing Entities and I Truck Logistics to the Knezevic Entities.

179.     Knezevic, by his own admission, stated RPM did not participate in business activities with transportation companies nor did he offer a service by which those entities would pay RPM.

180.     Accordingly, the transfers from the Borrowing Entities and I Truck Logistics to the Knezevic Entities were made without consideration.

181.     The transfers from the Borrowing Entities were at least in part the reason the Borrowing Entities defaulted on their loans with PNC.

182.     Knezevic, by virtue of his positions with the Knezevic Entities and his knowledge of the transfers from the Borrowing Entities, assisted with the fraudulent transfers from the Borrowing Entities.

**WHEREFORE**, PNC Bank, National Association requests that the Court award damages in its favor and against Predrag Knezevic, in an amount to be proven at trial or hearing plus additional interest, court costs and attorneys' fees; and any and all other relief the Court deems just, proper, and equitable.

Respectfully submitted,
**PNC BANK, NATIONAL ASSOCIATION**

By: _/s/   Martin J. Wasserman_
        One of its Attorneys

Martin J. Wasserman ARDC # 6294040
Mona Naser ARDC # 6278114
CARLSON DASH, LLC
216 S. Jefferson Street, Suite 504
Chicago, Illinois 60661
Telephone: (312) 382-1600
Email: mwasserman@carlsondash.com
Email: mnaser@carlsondash.com