IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>PREDRAG KNEZEVIC, RPM REAL ESTATE )<br>INVESTMENT, INC., NORTH SAWYER )<br>HOLDINGS, LTD., and P & T REAL ESTATE )<br>INVESTMENT GROUP, LLC., )<br>Defendants. ) | No. 20 cv 6099 |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, Predrag Knezevic, R P M Real Estate Investment, Inc., North Sawyer Holdings, LTD., and P & T Real Estate Investment Group, LLC., and each of them, by and through the Law Office of Phillip J. Bartolementi, LTD., and pursuant to Rule 56 of the Federal Rules of Civil Procedure respectfully moves for Summary Judgment on all Counts in the Complaint. In support of their Motion, the Defendants state:

The Plaintiff's Second Amended Complaint is a Seven Count Complaint. Counts One and Two are Federal Claims, Count One being a Federal Civil Rico Claim, (18 U.S.C. 1962 © and Count Two plead as a Conspiracy to Violate Federal Civil Rico (18 U.S.C. 1962 (d) against all the named Defendants. The remaining Counts are pendent State Claims. Count Three is a Conspiracy to Defraud brought against all Defendants. Counts Four, Five and Six are Fraudulent Transfer claims brought as one count against each of the three named Defendant companies. Count Seven is a claim for Aiding and Abetting Fraudulent Transfer brought individually against Defendant Predrag Knezevic. For all of the foregoing reasons, Defendants' Motion for Summary Judgment should be granted.    1.

The Complaint (Ex. 1, Count I) alleges that Plaintiff PNC Bank (PNC) made business loans and extended credit lines to some non-party trucking business entities (borrowers) from April, 2018 to November, 2018. The Complaint alleges that the Defendants were paid a small portion of these proceeds by checks written by the borrowers to the Defendant or his companies. Plaintiff alleges that the Defendant, Predrag Knezevic, and his companies conspired with the Borrowers and in doing so, violated RICO (18 U.S.C. 1962 ©, and that PNC was injured when the Borrowers defaulted on the loans.

Count Two of the Complaint alleges a Conspiracy to Violate RICO (18 U.S.C. 1962(d) in that Knezevic is alleged to have facilitated a scheme with the borrowers where the borrowers would apply for loans they did not intend to repay and that Knezevic would receive some of the loan proceeds.

Count Three is a State claim for Conspiracy to Defraud, alleges the same basis as Count Two for the conspiracy theory and alleges that Knezevic controlled the enterprise.

Counts Four, Five and Six (COUNT IV vs. RPM Real Estate Investment, Inc., COUNT V vs. North Sawyer Holdings, LTD., and COUNT VI vs. P & T Real Estate Investment, Inc) allege a transfer of funds by the borrowers to the Knezevic companies, contending that the transfers were made without consideration and are therefore fraudulent.

Count Seven is against Knezevic in his individual capacity and alleges Fraudulent Transfer in that he aided and abetted the transfers without consideration.

## STATEMENT OF FACTS

The Defendant, Predrag Knezevic is a business owner who is in the business of buying and selling real estate. (Knezevic Affidavit, Ex. 2). He is the sole owner of the real estate companies named as Defendants in this case. He purchases multi-unit buildings in distressed condition, and renovates the buildings, which he then rents to tenants. (Ex. 2, para. 1-2) He hires workers with trade experience and laborers in the renovations. He may have as many as 30 to 50 paying tenants at any given time. He may own several buildings at any given time. He employs workers as he needs them with trade experience and laborers. (Ex. 2, para. 1-2)

Mr. Knezevic is well known in the Serbian Community and enjoys a reputable standing, attends social functions and events held by the Serbian Community, and has earned a trustworthy reputation. This has given him the opportunity to meet several people, some of whom he has done business with. (Ex. 2, para. 1-6).

He has made short term loans to people in the Serbian Community who may or may not own businesses, and he has assisted people with employment opportunities in the Community. Mr. Knezevic does not assist people with obtaining bank loans, does not co-sign loans, nor does he refer anybody to any person or bank for the purpose of making loans: (Ex. 2, para. 1-6).

Troy Heishman is the Vice President of Business banking for PNC. (Ex. 3, Heishman Dep. pg. 5). He handled the loans for Denali, Inc., Hall Transport, Drazo Transport, and NKM Logistics which the Plaintiff's Complaint identifies as four of the non-party borrowing entities named in this case. (Ex. 3, pgs. 11, 15). Heishman does not recall which of these companies first came to him for a loan, but he testified that he first met with a loan broker he identified as "Daniel." (Ex.

3, pg. 31). He identified "Daniel" as the one who referred the first company to him. (Ex. 3, pg. 31).

Heishman recalls that in his meeting with "Daniel" he reviewed the banks various loan programs with "Daniel" and then it was "Daniel" who referred him the first transportation company. While he could not recall the name of the company, he recalls that it started with a "D." (Ex. 3, pg 31). After that, the other companies that applied for loans were "referrals from each other." (Ex. 3, pg. 11).

Heishman testified that met with "Daniel" because he was referred to him by another PNC Banker from the Commercial Banking Group. That Banker was identified as Matt Stanio. (Ex. 3, pg. 33). Stanio was the Vice President of Commercial Banking. (Ex. 4, Stanio Dep., pg. 5,7). Stanio did not have a recollection of the referral to Heishman but said it was "plausible." Stanio did not handle loans for under $100,000.00. (Ex. 4, pg. 6, line 21 to pg. 7, lines 1-11). The loans that are the subject of Plaintiff's Complaint are for $75,000.00 or less. (Ex. 1).

Heishman stated that he has never met the Defendant, Knezevic. (Ex. 3, pg. 36, lines 22-24. Heishman testified that he has never heard his name, and has not seen any documents or spoken to anyone to indicate that the Defendant Knezevic participated in the loans to the borrowing entities. (Ex. 3, pg. 37, lines 12-24; pg. 38, lines 12).

Jill Felber worked as an underwriter for PNC and was involved in at least one of the loans to the borrowing entities. (Ex. 5, pg. 11, lines 3-5, line 24). She has never heard of the Defendant Knezevic or his companies. (Ex. 5, pg. 9, lines 10-22). Felber testified that she has not seen any documents or spoken to anyone that suggests that Knezevic referred or directed the borrower

4.

(Mr. Marusic/Denali) to make the loan, or that Knezevic participated in the operation or management of the loan. (Ex. 5, pg. 37).

The Defendant, Predrag Knezevic, has never had any contact with any person or representative from PNC concerning the borrowing entities or loans that are the subject of Plaintiff's Complaint. (Ex. 2, para. 9). He did not make any representations or do anything to induce PNC or cause PNC to rely on him in making the loans to the borrowing entities. (Ex. 2, para. 10). Nor did he refer, direct or instruct any individuals or principals of the borrowing entities to apply for loans and/or lines of credit. (Ex. 2, para. 11). Knezevic did not enter into any agreement with borrowing entities and was not aware of where they did their banking. (Ex. 2, para. 13).

## ARGUMENT

Federal Rule 56 (a) states, in pertinent part that, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. (Federal Rule of Civil Procedure 56 (a). Metaphysical doubt as to the material facts is not enough to overcome summary judgment, and a party may not rest upon the mere allegations of his pleading. Conclusory allegations by the party opposing the motion cannot defeat the motion. Anderson v. Liberty Lobby, Inc. 477 U.S. 242; 106 S.Ct. 2505; 91 L.Ed. 202 (1986). To preclude summary judgment, the non-moving party must show the disputed fact to be outcome determinative under the applicable law. However, the mere existence of a disputed fact is not, in and of itself, enough to withstand a motion for summary judgment. Matsushita Electric Industrial Co., vs. Zenith Radio Corp. 475 U.S. 574 (1986).

5.

The Counts in the Plaintiff's Complaint all have commonality in the allegation that Defendants conspired with the borrowing entities in securing loans from PNC. Without sufficient evidence of the alleged conspiracy, the complaint fails in all respects.

One question that presents itself in the consideration of this motion and the evidence in the case, is that the borrowers did not need the Defendant to carry out this scheme, even if there was one to begin with. It is clear from the testimony of PNC Bankers Heishman and Felber, that the borrowing entities qualified for the loans independent of any involvement of Mr. Knezevic. Once qualified, the loan proceeds were paid to the borrowers, not to Mr. Knezevic. The borrowers had control of the loan proceeds. Why did the borrowers need this Defendant to carry out this alleged scheme?  It is clear from the record that PNC made its own decisions on the loans. There is not even an allegation in the Complaint that Knezevic misled, misrepresented or did anything that would have induced PNC to issue these loans. Essentially, the Complaint alleges that Knezevic referred the borrowers to PNC. But PNC did not make the loans on the basis of a referral. Indeed, the evidence to the contrary is that the borrowers were referred by a loan broker, and thereafter referrals from each other. (Ex. 3, pg. 11, 31).

The Defendants would first like to illustrate some of the more material allegations raised in the Complaint, for which there is an absence of evidence in the record to support those contentions. Essentially, the Plaintiff alleges that non-party borrowers made loans from PNC and then defaulted on those loans. A small portion of the loan proceeds was paid to the Defendant or his companies for repayment of loan obligations of the borrowers.

In the RICO Counts (1 & 2) of Plaintiff's Complaint, the Plaintiff alleges that Defendants

6.

"formed an association-in-fact" with the borrowers (Ex. 1, para. 116) but has produced no such Fact. As stated, the only uncontradicted evidence in the record establishes that the borrowers were referred to PNC by a loan broker loan broker and thereafter the referrals came from other trucking companies.

The Complaint alleges that Defendant Knezevic acted with "specific intent" (Ex. 1, para 119), but has produced no evidence of any intent, let alone specific intent. Likewise, that Defendant Knezevic "participated in the operation and management of the Enterprise by coordinating the commission of multiple acts of racketeering." (Ex. 1, para. 123). The only testimony in the record came from the Defendant and the PNC Bankers. There is no testimony from any borrowers in the record. No documents or evidence has been produced to establish that Defendant referred the borrowers to PNC, and no evidence that the borrowing entities were "directly controlled" by one or more of the Defendants. (Ex. 1, para. 140).

## COUNT 1-FEDERAL CIVIL RICO (18 U.S.C. 1962 ©

RICO was originally enacted "in an attempt to eradicate organized, long-term criminal activity. Midwest Grinding Co. v. Spitz, 976 F.2d 1016 (7th Cir. 1992). The elements of a RICO violation consist of (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. S.P.R.I v. Imrex Co. 473 U.S. 479; 105 S.Ct. 3275 (1985). A RICO Plaintiff must show that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity. H. J. Inc. v Northwestern Bell Tel. Co. 492 U.S. 229; 109 S.Ct. 2893 (1989). Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the continuity aspect of RICO. H, J. Inc. 492 S.Ct. at 242.

In the case at bar, the Plaintiff has failed to establish the elements of a RICO claim sufficient to defeat Summary Judgment. The evidence is insufficient to establish an enterprise. The loans to the entities in the Complaint were separate and distinct, to different entities, and there is no evidence that the borrowing entities were related in some manner.

Simply stated, there is no evidence that the entities that applied for the loans were working as a group. The Supreme Court has defines an enterprise as a group of persons associated together for a common purpose of engaging in a course of conduct and by evidence that the various associates function as a continuing unit. United States v. Turkette 452 U.S. 576; 101 S.Ct. 2524 (1981).

Neither has Plaintiff established a pattern of racketeering within the meaning of RICO. The acts relied on in Plaintiff's Complaint commenced in April, 2018 and ended in November 2018. They allege a single transaction on June 20, 2019, and there is no evidence that this transaction, far removed in time, is unrelated to Plaintiff's claims in 2018. The alleged conduct was closed-ended and did not have sufficient duration to satisfy the requirements of RICO. The Defendants will also address these issues in the Memorandum of Law.

In the case at bar, the Plaintiff has failed to establish a genuine issue of material fact as it relates to the existence of conduct of an enterprise. Likewise, Plaintiff has failed to establish a pattern of continuing racketeering activity as defined by case law in the attached Memorandum of Law.

## COUNT 2-CONSPIRACY TO VIOLATE CIVIL RICO (18 U.S.C. 1962 (D)

Subsection (d) of U.S.C. 1962 provides that "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c). To demonstrate a civil RICO conspiracy, a claimant must prove that the conspiracy existed and that each named defendant knowingly became a member of the conspiracy with an intention to further that conspiracy. United States v. Volpendesto 746 F.3d 273 (7th Cir. 2014). As in all conspiracies, the essence of a RICO conspiracy violation is the agreement itself; the distinction between a traditional conspiracy and a RICO conspiracy is simply the breadth of the overall objective. Salinas v. United States, 522 U.S. 52; 118 S.Ct. 469 (1997).

While the Defendant reincorporates their argument to Count One RICO herein, the Defendants submit that the Plaintiff has failed to establish an agreement between Defendants and the borrowing entities. Plaintiff alleges that as part of the agreement, Defendants and the borrowers misrepresented information on the loan applications, of which Defendants did not participate. (Ex. 1, para. 138). The borrowers were referred to PNC by a mortgage broker and referred each other to PNC for the loans. There is no evidence that Defendants referred or directed the borrowers to PNC although the core of the Plaintiff's allegations is that the Defendant Knezevic directed the borrowers to PNC. The Complaint also states, and no evidence has been established, that Defendants "directly controlled" the borrowers. (Ex. 1, para 140).

The Plaintiff has failed to establish the elements of a RICO Conspiracy, and Defendants ask that Summary Judgment be granted on this Count II.

9.

## COUNT THREE-CONSPIRACY TO DEFRAUD

The Plaintiff's Complaint alleges a State claim for Conspiracy to Defraud. For the purposes of Summary Judgment, the standard in Illinois, as set forth in this Count and the remaining Counts of this Complaint, as they are State claims is as follows. Under 735 ILCS 5/2-1005 of the Illinois Code of Civil Procedure, Summary Judgment is proper when "the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The elements of a cause of action for conspiracy to defraud are: (1). A conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud. Bosak v. McDonough, 192 Ill.App.3d 799; 549 N.E.2d 643 (1st Dist. 1989). A "conspiracy" is a combination of two or more person to accomplish by concerted action an unlawful purpose or lawful purpose by unlawful means. Abell v. First National Bank, 153 Ill.App.3d 948; 506 N.E.2d 684 (1st Dist. 1987).

The Plaintiff has not provided evidence sufficient to overcome Summary Judgment on this Count. There is no direct evidence of a conspiracy to defraud. There is no evidence that Defendant Knezevic had any knowledge as to the source of funds of the borrowers, or that they had applied for loans from PNC. As set forth herein, there is evidence that the borrowers were referred to PNC by a loan broker and by each other. Without any direct evidence of fraud, proof of civil conspiracy by circumstantial evidence must be clear and convincing. Abell v. First National Bank, 153 Ill.App.3d 948; 506 N.E.2d 684 (1st. Dist. 1987).

The Plaintiff has not produced clear and convincing evidence and Summary Judgment should be entered on this Count.

## COUNTS IV, V AND VI-FRAUDULENT TRANSFER

Counts IV, V, and VI are Fraudulent Transfer Counts brought against Defendant Knezevic's Companies, namely, RPM Real Estate Investment, Inc. (Count IV), North Sawyer Holdings, Ltd. (Count V) and P & T Real Estate Investment, Inc. (Count VI).

As to all three of these counts, the common argument of the Plaintiff is that the Defendant Companies received a transfer of funds (checks), and the transfers were made without consideration. The only evidence as to whether or not there was consideration for these loans derives from the Defendant, who stated that the payments were reimbursements for loans. (Ex. 2, para. 14 to 27).

In Count IV, it is alleged that RPM Real Estate Investment, Inc. received payments from I Truck Logistics. Those are detailed in Plaintiff's Complaint at paragraphs 94-102. (Ex. 1). The alleged fraudulent transfer payments were made on the dates of March 24, 2018, (Check for $8,000.00), July 14, 2018 (Check for $18,200.00) and September 24, 2018, (Check for $8,000.00). According to the Complaint however, I Truck Logistics did not apply or receive a loan from PNC until on or after December 18, 2018. (Ex. 1, para. 94). I Truck Logistics could not have possibly transferred money that would give rise to any claim by PNC, because the transfers were not made with loan proceeds. Yet the Complaint alleges a fraudulent transfer, presumably with PNC funds, at a time when the borrower was not in receipt of any funds from PNC. Summary Judgment should be entered on this Count.

Count V alleges that Defendant North Sawyer Holdings, Ltd., received 3 checks from Drazo Transport on November 26, 2018 for $9,000.00, payable to RPM, and 2 checks on November

11.

27, 2018 for $9,200.00 payable to North Sawyer, and $8,000.00, payable to P & T Real Estate Investment Group, Inc., respectively. (Ex. 1, para. 73). The Complaint alleges that two months later, Drazo Transport defaulted on the loan, which was in the amount of $60,000.00. (Ex. 1, para. 70). The Complaint does not state where or how the bulk of the loan proceeds were spent.

The Defendant, Knezevic has offered the only evidence on the Drazo allegations. (Ex. 2, para. 18-19). Defendant was unaware that Drazo had taken a loan from PNC and therefore unaware of Drazo's source of funds. The payments made to Defendant consisted of a loan obligation of Drazo. Defendant directed Drazo to issue the repayment checks to his companies, which were used in the operation of Defendant's real estate business. (Ex. 2, para. 23). These transfers were made with consideration, were not fraudulent, and Summary Judgment should be entered on this Count.

Count V alleges that NKM Logistics, by or through Marco Supica, obtained a business loan from PNC on April 13, 2018 in the amount of $75,000.00. (Ex. 1, para. 40). It is alleged that on April 27, 2018 NKM issued a check to Defendant North Sawyer Holdings, Ltd., in the amount of $18,000.00. (Ex. 1, para. 46). Although the Complaint is unclear, sometime on or about March 1, 2019, NKM defaulted on the loan and the Complaint is silent on the reasons for the default.

The payment to North Sawyer Holdings was repayment of a loan made to NKM principal, Marko Supica. Defendant did no other business with Supica, and was unaware that he had obtained a loan from PNC and therefore unaware of Supica's source of funds. Defendant does

not know the reasons for the default of NKM on the PNC loan, and neither does the Complaint state the reasons for the default. (Ex. 2, para. 14-15).

Count V also alleges that Mon-Ex, Inc., applied for and received a loan for $50,000.00 and a credit line of $25,000.00 on or about May 14, 2019. (Ex. 1, para. 81). It is alleged that on June 20, 2019, Mon-Ex remitted a check to Defendant, North Sawyer Holdings in the amount of $10,000.00. (Ex. 1, para. 84). The Complaint alleges that Mon-Ex defaulted on the loan/line of credit, but does not specify when the default occurred, nor does the Complaint state the reasons for the default.

The Defendant stated that the payment from Mon-Ex represented a loan to its principal, Milodane Pusonja. (Ex. 2, para. 25). The Defendant was unaware of the source of funds used by Pusonja to repay the loan and was not aware that Mon-Ex had applied for a loan from PNC. The Complaint alleges that Mon-Ex defaulted on the loan although it is unclear when the default occurred or the reasons for the default. (Ex. 1, para. 85).

Summary Judgment should be entered on Count V as Plaintiff has not adduced evidence that the conveyances were made without consideration. The allegations in the Complaint and the beliefs of Counsel are not enough to overcome Summary Judgment. The only evidence is contrary to Plaintiff's contentions. Plaintiff has failed to establish a genuine issue of material fact as to whether the transfers were made with consideration.

### COUNT VI-FRAUDULENT TRANSFER-P & T REAL ESTATE IINVESTMENT, INC.

Count Vi alleges that Defendant P & T Real Estate Investment, Inc., (P & T) received a check in the amount of $8,000.00 from Drazo Transport on November 27, 2018. (Ex. 1, para. 73 ©.

13.

This is one of the Drazo checks that was discussed in Defendant's argument to Count V herein. Defendant would incorporate that argument herein. Defendant would further state that the check from Drazo represented repayment of a loan Defendant made to Drazo. (Ex. 2, para. 23). The Defendant was unaware of the source of these funds and was also unaware that Drazo had taken a loan with PNC or the reasons Drazo defaulted on the loan. The payment to P & T was repayment for a loan and therefore the transfer was made with consideration.

### COUNT VII-AIDING AND ABETTING FRAUDULENT TRANSFER-PREDRAG KNEZEVIC

Count VII alleges that Defendant Knezevic was aware of the transfers from the borrowing entities and I Truck Logistics to the Knezevic entities. (Ex. 1, para. 178). Defendant admits being aware of the transfers. Also alleged is that Knezevic did not participate in the business activities of the transportation companies. Defendant admits that he is in the real estate business. Ex. 2, para. 1-2).

While the Defendant was not involved in the transportation business of the borrowing entities, he did make loans to the borrowing entities, to their principals. The repayment of the loans in the form of check received by Defendant or his companies, represented consideration. The Plaintiff alleges that the transfers were "at least in part the reason the Borrowing entities defaulted on their loans with PNC." (Ex. 1, para. 181). The Plaintiff concludes this Count alleging that Knezevic "assisted" with the fraudulent transfers. (Ex. 1, para. 182).

The Plaintiff has produced no evidence regarding the reason or causation of the monies paid to the Defendants and the default of the loan. The Complaint is either silent, or as in this Count, alleges that Defendants are "at least in part" the reason for the default. The Plaintiff has the

14.

resources of the bank, the records, the transactions, the accounts, and the bankers themselves, but no evidence has been offered that the Defendants are at fault for the default, even "in part."

The Defendant did not aid and abet the fraudulent transfer because the transfers were not fraudulent and were made with consideration.

Accordingly, the Defendants, and each of them, respectfully ask this Honorable Court to enter Summary Judgment on all Counts in favor of the Defendants.

/s/ Phillip J. Bartolementi
Phillip J. Bartolementi, LTD.
Attorneys for Defendants, Predrag Knezevic, RPM Real Estate Investment, Inc., North Sawyer Holdings, LTD., and P & T Real Estate Investment Group, LLC.
53 West Jackson Blvd.
Suite 1401
Chicago, IL. 60604
(312) 360-9999
A.R.D.C. No. 06187230
pjblegal@hotmail.com

15.