IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 20 cv 6099 |
| | ) | |
| PREDRAG KNEZEVIC, RPM REAL ESTATE | ) | |
| INVESTMENT, INC., NORTH SAWYER | ) | |
| HOLDINGS, LTD., and P & T REAL ESTATE | ) | |
| INVESTMENT GROUP, LLC., | ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

NOW COME the Defendants, Predrag Knezevic, R P M Real Estate Investment, Inc., North Sawyer Holdings, LTD., and P & T Real Estate Investment Group, LLC., and each of them, by and through the Law Office of Phillip J. Bartolementi, LTD., and in support of Defendants' Motion for Summary Judgment, submits the following Memorandum of Law:

### COUNTS I AND II- RICO AND CONSPIRACY TO VIOLATE RICO

Counts One and Two of Plaintiff's Complaint allege violations of the RICO statute. The elements of a RICO violation consist of (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. 18 U.S.C. 1962 ©. Sedima S. P. R. I. vs. Imrex, Co., 473 U.S. 479; 105 S.Ct. 3275 (1985). Further, plaintiffs must show that they were injured in their business or property by reason of the RICO violation. 18 U.S.C. 1964 ©.

The Supreme Court has defined an enterprise as a group of persons associated together for a common purpose of engaging in a course of conduct. Such enterprise, licit or illicit, may be

1.

proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. United States v. Turkette, 452 U.S. 576; 101 S.Ct. 2524 (1981).

In the case at bar, there is no evidence in the record that the borrowing entities and Defendant Knezevic were functioning as a continuing unit. The transactions cited in the Complaint are separate and distinct from one another. (Ex. 1, Plaintiff's Complaint). As was argued in Defendants Motion for Summary Judgment, the borrowing entities were referred by a loan broker and may have referred one another to PNC, but that excludes the Defendants from participation. (Ex. 2, Heishman Deposition, pgs. 11, 31, 33). What this case establishes is a series of individual transactions of separate entities, with no evidence that they acted as a cohesive or functioned as a continuing unit. The Plaintiff has failed to establish the existence of an enterprise as defined by RICO.

Neither has the Plaintiff satisfied the required showing of a pattern of racketeering. The RICO statute does not define the pattern requirement, but provides that a pattern requires two acts of racketeering with a ten-year period. 18 U.S.C. 1961 (5). The Supreme Court has indicated that, in addition to at least two predicate acts, a RICO plaintiff must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity. H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229; 109 S.Ct. 2893 (1989).  The Supreme Court In H. J., held that ...a RICO plaintiff may no longer get by merely alleging two predicate acts, but must also satisfy the so-called "continuity plus relationship" test: the predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity

2.

(the continuity prong). 492 S.Ct. at 239.

In Sedima, S. P.R. I v. Imrex, 473 U.S. 479; 105 S.Ct. 3275 (1985), the Supreme Court noted that while a pattern requires at least 2 acts of racketeering, "pattern" does not mean two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed in common parlance two of anything do not generally for a "pattern." Sedima, 473 at 496.

Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. H. J. 492 U.S. at 241-242. Conduct without the threat of continued activity is not actionable. Gamboa v. Velez, 457 N.E.2d 703 (7th Cir. 2006). Hunter v. J. Craig Construction Co., 51 F.3d 275 (1995).

In the case at bar, the conduct presents no threat of future activity. The conduct complained of occurred from April 13, 2018 to December 18, 2018. (Ex. 1, para. 40, 78).  The one transaction beyond that period is alleged to have occurred June 20, 2019. (Ex. 1, para. 81-85. That transaction, involving a company named Mon-Ex, Inc. is too remote in time to be included in the enterprise and pattern alleged by the Plaintiff. This transaction was included for no other purpose than to extend the "pattern" of alleged racketeering activity.

The alleged conduct in this case, even if taken as true, occurred over a period of months and threatens no future criminal conduct. This does not satisfy the requirement of a pattern as defined by the case law cited. The alleged conduct in this case arose from the Plaintiff PNC, who extended loans to businesses without verification, without collateral, and required nothing more than a signature to obtain the loan. (Ex. 2, pgs. 23, 24 28). (Ex. 3, Felber Deposition, pgs. 20, 21, 36). The borrowing entities do not need the Defendants to obtain the loan.

3.

Neither has the Plaintiff has established causation of its injury to the conduct of the

Defendants. It is obvious that the Plaintiff's claim of injury derives from the borrowers'

loan default. However, no evidence has been established that the Defendants proximately

caused the default. The record is absent for any causation for the default. The defaults could

have occurred due to any number of business decisions or economic factors independent of the

Defendants. The Supreme Court has held that proximate cause is an essential element of RICO

civil liability. Holmes v. Securities Investor Protection Corp, 503 U.S. 258; 112 S.Ct. 1311 (1992).

Additionally, the Plaintiff must establish a reasonable inference that, in the absence of any of

the alleged conduct of the Defendants, the borrowing entities would not have defaulted. Flood

v. Waste Management, Inc., 986 F.2d 1424 (7th Cir. 1993). There has been no showing, outside

the bare allegations of the Complaint, that but for the conduct alleged against Defendants, that

the borrowing entities would not have defaulted anyway.

## RICO CONSPIRACY-18 U.S.C. 1962 (d)

A RICO conspiracy requires proof that (1) the defendants agreed to maintain an interest in or

control of an enterprise or to participate in the affairs of an enterprise through a pattern of

racketeering activity, and (2) the defendant further agreed that someone would commit at least

two predicate acts to accomplish these goals. Empress Casino Joliet Corp. v. Johnston, 763 F.3d

723 (7th Cir. 2014). One must knowingly agree to perform services of a kind which facilitate the

activities of those who are operating the enterprise in an illegal manner. Brouwer v.

Raffensperger, 199 F.3d 961 (7th Cir. 2000).

The Plaintiff has failed to establish that Defendant Knezevic had an interest or control of an

4.

enterprise, nor that he agreed to acts to accomplish the goals of the enterprise. No such

evidence exists outside the bare allegations of the Complaint and the theories and beliefs of

Plaintiff's Counsel.

The gravamen of Plaintiff's Complaint is that Defendant Knezevic operated and managed the

enterprise. (Ex. 1, para. 130). The only evidence establishes that the borrowers were initially

referred by a loan broker, and then others were referred by other trucking companies. (Ex. 2,

pgs. 11, 31, 33).

COUNT THREE-CONSPIRACY TO DEFRAUD

The elements of an action for Conspiracy to Defraud are: (1) a conspiracy; (2) an overt act of

fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud.

Abell vs. First National Bank, 153 Ill.App.3d 946; 506 N.E.2d 684 (1st Dist. 1987). The Plaintiff's

proof of a conspiracy is at best proven by conjecture. Other than receiving monies from the

borrowers, which represented repayment of a debt owed to Defendant, there is no evidence of

a conspiracy. Proof of a civil conspiracy, if made solely by circumstantial evidence, must be

clear and convincing. Abell, 153 Ill.App.3d at 948. The Complaint alleges that Knezevic and the

borrowing entities "combined and agreed" to defraud PNC. They allege that Defendants

induced PNC to loan money which was not intended to be paid back. (Ex. 1, para. 138).

The Defendant or his companies, have never had any contact with PNC. (Ex. 4, Knezevic

Affidavit, para. 9-12). The borrowers did not need the Defendant to secure these loans because

Defendant had no involvement in the loan process and none is alleged by Plaintiff. Simply

stated, the borrowers could have applied for the loans from PNC and kept all the money for

5.

themselves if they had no intention to pay the loans back. These companies were not just formed for the purpose of applying for the loans. (Ex. 5, Ill.Sec. of State Corp. Search). Drazo was incorporated September, 2016. Hall Transport was incorporated in August, 2012. NKM Logistics incorporated in November, 2017, Denali, Inc. incorporated in September, 2013.

There is insufficient evidence in the record to support a Conspiracy to Defraud. No Conspiracy can be proven, and Summary Judgment should be entered on this Count.

COUNTS IV, V AND VI-FRAUDULENT TRANSFER

Counts IV, V, and VI are Fraudulent Transfer Counts brought against Defendant Knezevic's Companies, namely, RPM Real Estate Investment, Inc. (Count IV), North Sawyer Holdings, Ltd. (Count V) and P & T Real Estate Investment, Inc. (Count VI).

As to all three of these counts, the common argument of the Plaintiff is that the Defendant Companies received a transfer of funds (checks), and the transfers were made without consideration. The only evidence as to whether or not there was consideration for these loans derives from the Defendant, who stated that the payments were reimbursements for loans. (Ex. 2, para. 14 to 27).

Under the Illinois Uniform Fraudulent Transfer Ace, a transfer made by a debtor is fraudulent as to a creditor if (the debtor made the transfer with actual intent to hinder or defeat a creditor (fraud in fact) or (2) the transfer was made for inadequate consideration and the debtor retained insufficient access to pay its obligation to the debtor (fraud in law). 740 ILCS 160/5(a).

To prevail on a cause of action based on fraud in fact, a party must prove that the transfers were made with actual intent to hinder, delay or defraud the creditors. Apollo Real Estate

6.

Investment Fund v. Geller, 403 Ill.App.3d 179 (1st Dist. 2010). To prevail on a cause of action based on fraud in law, the plaintiff must establish that there was inadequate consideration for the transfer.

On the issue of consideration, the question is whether there was adequate consideration for the payments by the borrowing entities to the Defendants. The only evidence of adequate consideration comes from the Defendant Knezevic. Plaintiff states that the payments he received from NKM Logistics and Supica, Hall Transport, Drazo Transport, Denali, Inc. Mon-Ex, and I Truck Logistics represented payment of loans he made to them. This is a legitimate transaction and represents payment of an obligation of the borrowers. Being the sole evidence in the case, adequate consideration has been established and Plaintiff has failed to establish this cause of action.

Concerning the payments from I Truck Logistics in Count IV, it is alleged that RPM Real Estate Investment, Inc. received payments from I Truck Logistics. Those are detailed in Plaintiff's Complaint at paragraphs 94-102. (Ex. 1). The alleged fraudulent transfer payments were made on the dates of March 24, 2018, (Check for $8,000.00), July 14, 2018 (Check for $18,200.00) and September 24, 2018, (Check for $8,000.00). According to the Complaint however, I Truck Logistics did not apply or receive a loan from PNC until on or after December 18, 2018. (Ex. 1, para. 94). I Truck Logistics could not have possibly transferred money that would give rise to any claim by PNC, because the transfers were not made with loan proceeds. Summary Judgment should be entered on this Count.

Count V alleges that Defendant North Sawyer Holdings, Ltd., received 3 checks from Drazo

7.

Transport on November 26, 2018 for $9,000.00, payable to RPM, and 2 checks on November

27, 2018 for $9,200.00 payable to North Sawyer, and $8,000.00, payable to P & T Real Estate

Investment Group, Inc., respectively. (Ex. 1, para. 73). The Complaint alleges that two months

later, Drazo Transport defaulted on the loan, which was in the amount of $60,000.00. (Ex. 1,

para. 70). The Complaint does not state where or how the bulk of the loan proceeds were

spent.

The Defendant, Knezevic has offered the only evidence on the Drazo allegations. (Ex. 2, para.

18-19). Defendant was unaware that Drazo had taken a loan from PNC and therefore unaware

of Drazo's source of funds. The payments made to Defendant consisted of a loan obligation of

Drazo. Defendant directed Drazo to issue the repayment checks to his companies, which were

used in the operation of Defendant's real estate business. (Ex. 4,, para. 23). These transfers

were made with consideration, were not fraudulent, and Summary Judgment should be

entered on this Count.

Count V alleges that NKM Logistics, by or through Marco Supica, obtained a business loan

from PNC on April 13, 2018 in the amount of $75,000.00. (Ex. 1, para. 40). It is alleged that on

April 27, 2018 NKM issued a check to Defendant North Sawyer Holdings, Ltd., in the amount of

$18,000.00. (Ex. 1, para. 46). Although the Complaint is unclear, sometime on or about

March 1, 2019, NKM defaulted on the loan and the Complaint is silent on the reasons for the

default.

The Defendants have established adequate consideration for these payments, as they were

loan payment obligations. As such the transfers do not lack consideration. Under the

8.

Fraudulent Transfer Act, the transfer must have been made without adequate consideration. 740 ILCS 160/5(a). Therefore, the Defendants are entitled to Summary Judgment on Counts IV, V and VI of the Complaint.

COUNTS IV, V AND VI-FRAUDULENT TRANSFER

Counts IV, V, and VI are Fraudulent Transfer Counts brought against Defendant Knezevic's Companies, namely, RPM Real Estate Investment, Inc. (Count IV), North Sawyer Holdings, Ltd. (Count V) and P & T Real Estate Investment, Inc. (Count VI).

As to all three of these counts, the common argument of the Plaintiff is that the Defendant Companies received a transfer of funds (checks), and the transfers were made without consideration. The only evidence as to whether or not there was consideration for these loans derives from the Defendant, who stated that the payments were reimbursements for loans. (Ex. 4, para. 14 to 27).

In Count IV, it is alleged that RPM Real Estate Investment, Inc. received payments from I Truck Logistics. Those are detailed in Plaintiff's Complaint at paragraphs 94-102. (Ex. 1). The alleged fraudulent transfer payments were made on the dates of March 24, 2018, (Check for $8,000.00), July 14, 2018 (Check for $18,200.00) and September 24, 2018, (Check for $8,000.00). According to the Complaint however, I Truck Logistics did not apply or receive a loan from PNC until on or after December 18, 2018. (Ex. 1, para. 94). I Truck Logistics could not have possibly transferred money that would give rise to any claim by PNC, because the transfers were not made with loan proceeds. Yet the Complaint alleges a fraudulent transfer, presumably with PNC funds, at a time when the borrower was not in receipt of any funds from

9.

PNC. Summary Judgment should be entered on this Count.

Count V alleges that Defendant North Sawyer Holdings, Ltd., received 3 checks from Drazo Transport on November 26, 2018 for $9,000.00, payable to RPM, and 2 checks on November 27, 2018 for $9,200.00 payable to North Sawyer, and $8,000.00, payable to P & T Real Estate Investment Group, Inc., respectively. (Ex. 1, para. 73). The Complaint alleges that two months later, Drazo Transport defaulted on the loan, which was in the amount of $60,000.00. (Ex. 1, para. 70). The Complaint does not state where or how the bulk of the loan proceeds were spent.

The Defendant, Knezevic has offered the only evidence on the Drazo allegations. (Ex. 4, para. 18-19). Defendant was unaware that Drazo had taken a loan from PNC and therefore unaware of Drazo's source of funds. The payments made to Defendant consisted of a loan obligation of Drazo. Defendant directed Drazo to issue the repayment checks to his companies, which were used in the operation of Defendant's real estate business. (Ex. 4, para. 23). These transfers were made with consideration, were not fraudulent, and Summary Judgment should be entered on this Count.

Count V alleges that NKM Logistics, by or through Marco Supica, obtained a business loan from PNC on April 13, 2018 in the amount of $75,000.00. (Ex. 1, para. 40). It is alleged that on April 27, 2018 NKM issued a check to Defendant North Sawyer Holdings, Ltd., in the amount of $18,000.00. (Ex. 1, para. 46). Although the Complaint is unclear, sometime on or about March 1, 2019, NKM defaulted on the loan and the Complaint is silent on the reasons for the default.

10.

The payment to North Sawyer Holdings was repayment of a loan made to NKM principal, Marko Supica. Defendant did no other business with Supica, and was unaware that he had obtained a loan from PNC and therefore unaware of Supica's source of funds. Defendant does

### COUNT VII-AIDIING AND ABETTING FRAUDULENT TRANSFER-PREDRAG KNEZEVIC

This Count alleges that Defendant Knezevic "assisted with the fraudulent transfers" from the borrowing entities. (Ex. 1, para. 182).

The elements of a claim for Aiding and Abetting are (1) the existence of an independent wrong committed by the primary offender and (2) the rendering of substantial assistance to the primary wrongdoer by the aider and abettor; and (30 the requisite scienter on the aider and abetter. R.E. Davis Chem. Corp. v. Nalco Chemical Co. 757 F. Supp 1499 (N.D.Ill. 1990). Substantial Assistance means more than just a little aid. To put it another way, to be held liable as an aider and abetter, a person must in some sort associate himself with the venture, participate in it as something that he wishes to bring about, and seek by his action to make it succeed. FMC Corp. v. Boesky, 727 F.Supp.1182 (N.D. Ill. 1989).

Even assuming the Plaintiff's Complaint allegations are true, the Defendant Knezevic did not render substantial assistance to the borrowers in this case. They were referred to PNC by others. The Defendant did not assist them in any way in applying and securing the loan. No representations were made by the Defendant to PNC to obtain the loans. PNC made the decisions to grant or deny the loans. They chose not to verify anything represented to them by the borrowers. Taking Plaintiff's allegation as true for the purpose of this argument, the Defendant was not a substantial factor in this alleged conspiracy. And in fact, the borrowers did

11.

not need the Defendant for this alleged conspiracy. For all of the foregoing reasons, the

Defendants, Predrag Knezevic, RPM Real Estate Investment Inc., North Sawyer Holdings, Inc.

and P & T Real Estate Investment Group, LLC., respectfully ask that the Court grant Summary

Judgment on all Counts of the Plaintiff's Complaint.

/s/ Phillip J. Bartolementi
Phillip J. Bartolementi, LTD.
Attorneys for All Named Defendants.
53 West Jackson Blvd.
Suite 1401
Chicago, IL. 60604
(312) 360-9999
Fax: 312-264-0346
A.R.D.C. No. 06187230
pjblegal@hotmail.com

12.